1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

United States District Court
For the Northern District of California

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| KAREN CONNOLLY,         ) | Case No.: 5:14-CV-01344-LHK |
|                    ) | |
|        Plaintiff,       ) | ORDER GRANTING IN PART AND |
|                    ) | DENYING IN PART MOTION TO |
|        v.             ) | DISMISS |
|                    ) | |
| WOLFGANG REMKES; WHJR ASSOCIATES, ) | |
| a sole proprietorship; and DOES 1 through 25, ) | |
| inclusive,                   ) | |
|                    ) | |
|        Defendants.     ) | |
| _____ ) | |

Plaintiff Karen Connolly sued Defendants Wolfgang Remkes and WHJR Associates

("WHJR"), along with other unnamed "Doe" defendants, for multiple causes of action related to

her former employment at WHJR.  Defendants have moved to dismiss all claims against them on

several grounds.  *See* ECF No. 12.  Connolly opposes dismissal of each of her claims.  *See* ECF

No. 14.  Having considered the briefing, the record in this case, and applicable law, the Court

GRANTS IN PART AND DENIES IN PART Defendants' motion for the reasons below.

I.      BACKGROUND

Except otherwise noted, the Court draws the following facts from Connolly's Complaint

and assumes their truth for purposes of this motion.  Connolly is a 64- or 65-year-old female with

an undisclosed medical condition, and a resident of Washington State.  *See* Compl. (ECF No. 1)

¶¶ 2, 17.  WHJR is a sole proprietorship, which Remkes owns, that does business in California.

1

United States District Court
For the Northern District of California

1    *See id.* ¶ 2.  Connolly does not describe Defendants' business, but Defendants have explained that

2    Remkes works in the securities industry and is associated with third party Royal Alliance

3    Associates, Inc. ("Royal Alliance").  *See* ECF No. 18 at 3.

4         In a letter dated May 28, 2012, Remkes extended a job offer to Connolly.  *See* Compl. Ex. 1

5    (ECF No. 1-1).  In the letter, Remkes memorialized certain terms of Connolly's employment.

6    Specifically, Remkes stated: "Your initial working time will be a forty hour week; however, I think

7    a lower number i.e. 36 will probably be more realistic in the future for a number of reasons.  At this

8    time you are asked to start at 10am to 7pm with one hour for lunch.  This time might be adjusted

9    from time to time."  *Id.*  The letter also stated that Connolly's starting salary "will be $44,000 per

10   annum."  *Id.*  Connolly accepted this offer and moved to Campbell, California to begin work on

11   July 9, 2012.  *See* Compl. ¶¶ 2-5.

12        On December 13, 2012, as part of her duties at work, Connolly received and reviewed a file

13   from Rolf Trausch, another financial advisor.  *Id.* ¶ 8.  Connolly claims that this file (the "Trausch

14   file") contained "actual checks" and "appeared to be a violation of various FINRA rules," *id.* ¶¶ 8,

15   10, referring to the rules of the Financial Industry Regulatory Authority.  Connolly claims that

16   "[t]he underlying regulation violated was FINRA Rule 3240 which barred payment by a broker

17   into a client account."  *Id.* ¶ 14.  Remkes allegedly told Connolly that the Trausch file was not a

18   FINRA violation, but instructed Connolly to call the compliance department at Royal Alliance.  *Id.*

19   ¶ 8.  Connolly then spoke to Hal Gilbert, a Royal Alliance compliance officer, who "orally

20   confirmed that the file and checks were a serious violation."  *Id.*  Connolly reported her

21   conversation with Gilbert to Remkes.  *Id.* ¶ 9.  Remkes told Connolly that she should have

22   presented the scenario to Gilbert as a hypothetical.  Remkes then called Trausch, "who explained

23   that the file was intended to be a charitable donation of some kind."  *Id.*  Remkes then instructed

24   Connolly to copy the file for Remkes's eyes only and to return the file to Trausch, and further told

25   Connolly that the matter was resolved.  *Id.*

26

27

28

2

On December 17, 2012, Gilbert e-mailed Connolly about the incident, asking for a written statement.  *Id.* ¶ 10.[1]  After learning of Gilbert's inquiry, Remkes told Connolly not to respond to the inquiry, and instead drafted a responsive e-mail that he showed her.  Connolly claims that Remkes's draft e-mail "was not truthful," that Remkes directed her to tell Gilbert that "there was no real file and no actual checks," and that Remkes "said he was going to shred his file."  *Id.*

Connolly states that she "was not going to lie and would not be involved in a cover up," and that in response to these events, "[s]he went home and returned the next morning, December 18, 2012, wrote her letter of resignation, cleaned out her desk and returned the keys to the office."  *Id.*  Connolly states that she then returned home and left Gilbert a voice message, saying that the Trausch file contained actual checks.  *Id.* ¶ 11.  "Later in the day of December 18, 2012, Mr. Gilbert called back asking the plaintiff what she wanted.  She asked him to protect her licenses.  He asked if she wanted to stay with Royal Alliance and she said she did."  *Id.* ¶ 12.  The Complaint does not describe what actions Gilbert or Connolly took next, or whether Connolly resumed work for Royal Alliance.

Overall, Connolly asserts that Remkes "did not want a male and big producer, Mr. Rolf Trausch, to receive a Letter of Education or other sanction and thus told the plaintiff, a female and age 65," to participate in a cover-up.  *Id.* ¶ 15.  Connolly claims that Remkes engaged in "coercive efforts" against her, "forcing her to quit and effectively causing a constructive discharge."  *Id.* ¶ 17.

Connolly filed this lawsuit on March 24, 2014, alleging eleven separate causes of action against Defendants.  On June 10, 2014, Defendants filed the present motion, seeking to dismiss all of Connolly's claims on various grounds.  ECF No. 12 ("Mot.").  On June 24, 2014, Connolly filed an Opposition.  ECF No. 14 ("Opp'n").  On July 1, 2014, Defendants filed a Reply.  ECF No. 15 ("Reply").

---

[1]     Connolly claims that this e-mail is attached to the Complaint as Exhibit 2.  However, Exhibit 2 includes only an e-mail from the "UPS Store" that says: "Hello, here you can find your docs. as pdf attachments Thank you."  Compl. Ex. 2 (ECF No. 1-1).  There is no reference to Gilbert in the message.

Case No.: 5:14-CV-01344-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1   **II.     LEGAL STANDARDS**

2           A complaint must contain "a short and plain statement of the claim showing that the pleader

3   is entitled to relief." Fed. R. Civ. P. 8(a)(2). If a plaintiff fails to plead "enough facts to state a

4   claim to relief that is plausible on its face," the complaint may be dismissed for failure to state a

5   claim upon which relief may be granted. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007);

6   Fed. R. Civ. P. 12(b)(6). "A claim has facial plausibility when the plaintiff pleads factual content

7   that allows the court to draw the reasonable inference that the defendant is liable for the

8   misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is

9   not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant

10  has acted unlawfully." *Id.* (internal quotation marks omitted). For purposes of ruling on a Rule

11  12(b)(6) motion, a court "accept[s] factual allegations in the complaint as true and construe[s] the

12  pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire &*

13  *Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

14          "When reviewing a motion to dismiss, we 'consider only allegations contained in the

15  pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice.'"

16  *Akhtar v. Mesa*, 698 F.3d 1202, 1212 (9th Cir. 2012) (citation omitted). However, a court need not

17  accept as true allegations contradicted by judicially noticeable facts, *Shwarz v. United States*, 234

18  F.3d 428, 435 (9th Cir. 2000), and "a court may look beyond the plaintiff's complaint to matters of

19  public record" without converting the Rule 12(b)(6) motion into one for summary judgment, *Shaw*

20  *v. Hahn*, 56 F.3d 1128, 1129 n.1 (9th Cir. 1995). Nor is the court required to "'assume the truth of

21  legal conclusions merely because they are cast in the form of factual allegations.'" *Fayer v.*

22  *Vaughn*, 649 F.3d 1061, 1064 (9th Cir. 2011) (per curiam) (quoting *W. Mining Council v. Watt*,

23  643 F.2d 618, 624 (9th Cir. 1981)). Mere "conclusory allegations of law and unwarranted

24  inferences are insufficient to defeat a motion to dismiss." *Adams v. Johnson*, 355 F.3d 1179, 1183

25  (9th Cir. 2004); *accord Iqbal*, 556 U.S. at 678. Furthermore, "a plaintiff may plead herself out of

26  court" if she "plead[s] facts which establish that [s]he cannot prevail on h[er] . . . claim." *Weisbuch*

27  *v. Cnty. of Los Angeles*, 119 F.3d 778, 783 n.1 (9th Cir. 1997) (internal quotation marks omitted).

28

United States District Court
For the Northern District of California

"Dismissal with prejudice and without leave to amend is not appropriate unless it is clear . . . that the complaint could not be saved by amendment." *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003). When dismissing a complaint for failure to state a claim, "a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (*en banc*) (quoting *Doe v. United States*, 58 F.3d 494, 497 (9th Cir. 1995)). Nonetheless, a court "may exercise its discretion to deny leave to amend due to . . . 'futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892-93 (9th Cir. 2010) (citation omitted).

## III.    DISCUSSION

Among her eleven causes of action, Connolly pleads a variety of federal and state law claims. In her first and second causes of action, Connolly claims that she is a "whistleblower" under the federal Dodd-Frank and Sarbanes-Oxley Acts, and that Defendants wrongfully discharged her in retaliation for reporting alleged FINRA violations. In her remaining causes of action, she asserts multiple state law claims related to her employment agreement with WHJR. Connolly identifies multiple putative bases for subject matter jurisdiction over her eleven causes of action, including diversity, declaratory judgment, federal question, and supplemental jurisdiction. *See* Compl. ¶ 1. To facilitate evaluation of jurisdiction, the Court first addresses Connolly's claims based on federal law before turning to her state law claims.

### A.    Federal Whistleblower Claims: First and Second Causes of Action

Connolly includes two causes of action against Defendants based on her alleged status as a whistleblower under federal statutes. In her first cause of action, Connolly pleads a claim for "declaratory relief as to whether she does or does not qualify as a Whistle blower under the federal Whistle blower statutes and whether she is subject to its protections." Compl. ¶ 32. Specifically, Connolly seeks a declaration that she qualifies as a whistleblower under the Sarbanes-Oxley and/or Dodd-Frank Acts. *See id.* ¶¶ 21, 23. Next, in her second cause of action, she alleges wrongful termination in violation of federal whistleblower laws, claiming that she "engaged in a protected

1    activity under [the Dodd-Frank Act] and/or [the Sarbanes-Oxley Act]" by reporting "suspicious

2    behavior that violated FINRA rules and/or was illegal." *Id.* ¶¶ 35-36.

3         Defendants move to dismiss the first and second causes of action on the grounds that

4    Connolly is not entitled to whistleblower status under either federal statute. *See* Mot. at 10.

5    Defendants argue that Connolly does not qualify under the Dodd-Frank Act because she did not

6    report any alleged violations to the Securities and Exchange Commission ("SEC"). Defendants

7    also argue that Connolly cannot maintain any claim under the Sarbanes-Oxley Act because her

8    claim is time-barred, WHJR is not a public company within the scope of the Act, and Connolly has

9    not engaged in protected activity. The Court addresses these arguments in turn.

10                    **1.    The Dodd-Frank Act**

11        The Dodd-Frank Act (the Dodd-Frank Wall Street Reform and Consumer Protection Act of

12   2010, Pub. L. 111-203, H.R. 4173) provides for certain "[s]ecurities whistleblower incentives and

13   protection." 15 U.S.C. § 78u-6. The Act defines a "whistleblower" as "any individual who

14   provides, or 2 or more individuals acting jointly who provide, information relating to a violation of

15   the securities laws *to the Commission*, in a manner established, by rule or regulation, by the

16   Commission." *Id.* § 78u-6(a)(6) (emphasis added). The Act also prohibits retaliation for any

17   lawful act done by the whistleblower:

18        (i) in providing information to the Commission in accordance with this section;

19        (ii) in initiating, testifying in, or assisting in any investigation or judicial or
20        administrative action of the Commission based upon or related to such information;
          or

21        (iii) in making disclosures that are required or protected under the Sarbanes-Oxley
22        Act of 2002 (15 U.S.C. 7201 et seq.), this chapter, including section 78j-1(m) of
          this title, section 1513(e) of Title 18, and any other law, rule, or regulation subject
23        to the jurisdiction of the Commission.

24   *Id.* § 78u-6(h)(1)(A). Dodd-Frank creates a private right of action against employers who retaliate

     against such whistleblowers. *See id.* § 78u-6(h)(1)(B).

25        Here, Connolly alleges that she reported violations of securities laws, which protects her as

26   a whistleblower under the Dodd-Frank Act. *See* Compl. ¶ 23. Defendants disagree, arguing that

27   Dodd-Frank excludes Connolly because she did not report any supposed violations "to the

28

Case No.: 5:14-CV-01344-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

1   Commission," as defined in § 78u-6(a)(6)—only to the internal compliance department at Royal

2   Alliance.  *See* Mot. at 10.  Defendants raise no other challenges to her Dodd-Frank claim.

3   Defendants concede that there is a split of authority as to whether a Dodd-Frank

4   "whistleblower" must report directly to the SEC.  *See* Reply at 5.  It also appears to be "a matter of

5   first impression in the Ninth Circuit."  *Banko v. Apple Inc.*, No. 13-CV-02977 RS, 2013 WL

6   7394596 (N.D. Cal. Sept. 27, 2013).  This split of authority stems from statutory ambiguity.

7   Section 78u-6(a)(6) of the Dodd-Frank Act defines a "whistleblower" as someone who provides

8   information "to the Commission."  However, as noted above, Dodd-Frank sets forth three types of

9   protected whistleblower activity, the last of which includes "making disclosures that are required or

10  protected under the Sarbanes-Oxley Act."  § 78u-6(h)(1)(A)(iii).  In turn, the Sarbanes-Oxley Act

11  affords whistleblower protection to an employee who gives "information or assistance" to "a

12  person with supervisory authority over the employee," not only to the SEC.  18 U.S.C.

13  § 1514A(a)(1)(C).  In light of these conflicting provisions, the SEC issued a regulation stating that

14  "you are a whistleblower if . . . [y]ou provide information in a manner described in . . . 15 U.S.C.

15  78u-6(h)(1)(A)," which does not require reporting violations directly to the SEC.  17 C.F.R.

16  § 240.21F-2(b)(1) ("Rule 21F-2(b)(1)").  Additionally, the SEC has taken the position in litigation

17  that Rule 21F-2(b)(1) is a reasonable administrative interpretation of Dodd-Frank, and that direct

18  reporting to the SEC is not a whistleblowing requirement.  *See* Br. of the Sec. & Exch. Comm'n at

19  22, *Liu v. Siemens AG*, No. 13-4385 (2d Cir. Feb. 20, 2014) ("SEC Amicus Br.").

20  A minority of courts that have considered this issue have held that § 78u-6(a)(6) requires

21  direct reporting to the SEC, contrary to the SEC's regulatory position.  In *Asadi v. G.E. Energy*

22  *(USA), L.L.C.*, the only appellate authority on this question, the Fifth Circuit concluded that "the

23  whistleblower-protection provision unambiguously requires individuals to provide information

24  relating to a violation of the securities laws *to the SEC* to qualify for protection from retaliation

25  under § 78u-6(h)."  720 F.3d 620, 629 (5th Cir. 2013) (emphasis in original).  The *Asadi* Court

26  ruled that "[u]nder Dodd-Frank's plain language and structure, there is only one category of

27  whistleblowers: individuals who provide information relating to a securities law violation to the

28  SEC."  *Id.* at 625.  The *Asadi* Court found no conflict between this definition and § 78u-

7

United States District Court
For the Northern District of California

6(h)(1)(A)(iii)'s incorporation of Sarbanes-Oxley.  *Id.* at 626-28.  Finally, the *Asadi* Court gave no

deference to the SEC's interpretation of the statute in Rule 21F-2(b)(1) because "Congress has

directly addressed the precise question at issue."  *Id.* at 630.  Three district courts (including one in

this district) have followed *Asadi* and interpreted "whistleblower" narrowly.  *See Englehart v.*

*Career Educ. Corp.*, No. 8:14-CV-444-T-33 EAJ, 2014 WL 2619501, at *9 (M.D. Fla. May 12,

2014); *Banko*, 2013 WL 7394596, at *3-4; *Wagner v. Bank of Am. Corp.*, No. 12-cv-00381, 2013

WL 3786643, at *6 (D. Colo. July 19, 2013).

      By contrast, a large majority of district courts before and after *Asadi* have taken a different

position, finding ambiguity in the interplay between §§ 78u-6(a)(6) and 78u-6(h)(1)(A)(iii) and

deferring to the SEC's interpretation of Dodd-Frank.  For example, in *Murray v. UBS Securities,*

*LLC*, the Southern District of New York analyzed the SEC's regulation under the framework of

*Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984), holding that

Rule 21F-2(b)(1) was a proper agency interpretation of an unclear statute.  No. 12 Civ. 5914(JMF),

2013 WL 2190084 (S.D.N.Y. May 21, 2013).  "Here, the ambiguity arises from the tension

between Section 78u-6(a)(6), which limits the definition of 'whistleblower' to one who makes a

disclosure to the SEC, and Section 78u-6(h)(1)(A)(iii), which contemplates a broader scope of

protection."  *Id.* at *4.  *Murray* found that the SEC purposely sought to resolve this ambiguity in its

regulation, and that "the SEC's interpretation is a reasonable one."  *Id.* at *5-6.[2]  After the Fifth

Circuit's decision in *Asadi*, most district courts have continued to find the statutory definition of

"whistleblower" ambiguous and reject *Asadi*'s strict interpretation of that definition as contrary to

Dodd-Frank's purpose of encouraging reporting of securities violations.  As an example, in *Khazin*

---

[2]    *See also Genberg v. Porter*, 935 F. Supp. 2d 1094, 1106 (D. Colo. 2013) ("Thus, this DFA [Dodd-Frank Act] provision is in direct conflict with the DFA's definition of a whistleblower because it provides protection to persons who have not disclosed information to the SEC."); *Nollner v. S. Baptist Convention, Inc.*, 852 F. Supp. 2d 986, 993 (M.D. Tenn. 2012) ("By contrast, the third category does not require that the whistleblower have interacted directly with the SEC . . . ."); *Kramer v. Trans-Lux Corp.*, 3:11CV1424 SRU, 2012 WL 4444820, at *4-5 (D. Conn. Sept. 25, 2012) ("I do not believe it is unambiguously clear that the Dodd-Frank Act's retaliation provision only applies to those individuals who have provided information relating to a securities violation to the Commission . . . ."); *Egan v. TradingScreen, Inc.*, 10 CIV. 8202 LBS, 2011 WL 1672066, at *5 (S.D.N.Y. May 4, 2011) (holding that § 78u-6(h)(1)(A)(iii) (the Sarbanes-Oxley retaliation section) provides "a narrow exception to 15 U.S.C. § 78u-6(a)(6)'s definition of a whistleblower as one who reports to the SEC").

*v. TD Ameritrade Holding Corp.*, the District of New Jersey disregarded *Asadi*, agreeing "with the majority of district courts' view that the Dodd-Frank Act is ambiguous with respect to who qualifies as a whistleblower for purposes of the anti-retaliation provision of the statute." No. 13-4149, 2014 WL 940703, at *6 (D.N.J. Mar. 11, 2014). Accordingly, the *Khazin* Court concluded: "The SEC's rule harmonizes the contradictory provisions of the Dodd-Frank Act while not rendering any word or section superfluous." *Id.*[3]

Additionally, the SEC has argued that *Asadi* was decided incorrectly and contradicts the purposes of Dodd-Frank. In its recent amicus brief to the Second Circuit, the SEC contended that *Asadi*'s reading of "whistleblower" renders § 78u-6(h)(1)(A)(iii) ineffective. *See* SEC Amicus Br. at 21-22. Using the *Asadi* "whistleblower" definition, under § 78u-6(h)(1)(A), if an employer knows that an employee has reported violations both internally and to the SEC, clause (iii) is unnecessary because clauses (i) and (ii) already prevent the employer from retaliating against the employee for reporting to the SEC. *Id.* Under *Asadi*, the only situation where clause (iii) is not superfluous is "where the employer, unaware that the individual had already reported to the Commission, takes an adverse employment action against the employee for a disclosure listed in clause (iii)." *Id.* at 22. However, under *Asadi*, "clause (iii) would be utterly ineffective as a preventive measure" because "employers would not know that a report was made to the Commission." *Id.* at 22-23. The SEC argues that its rule, Rule 21F-2(b)(1), reasonably resolves this tension because it "ensur[es] that individuals who report internally first will not be potentially disadvantaged by losing employment anti-retaliation protection." *Id.* at 28.

---

[3]     *See also Berman v. Neo@Ogilvy LLC*, No. 14-CV-00523, 2014 U.S. Dist. LEXIS 115078, at *21-22 (S.D.N.Y. Aug. 15, 2014) (disagreeing with *Asadi*); *Bussing v. COR Clearing, LLC*, No. 8:12-CV-238, 2014 WL 2111207, at *11-12 (D. Neb. May 21, 2014) (independently adopting SEC's view based on statutory language); *Yang v. Navigators Grp., Inc.*, No. 13-cv-2073, 2014 WL 1870802, at *13 (S.D.N.Y. May 8, 2014) (disagreeing with *Asadi*); *Azim v. Tortois Capital Advisors, LLC*, No. 13-2267, 2014 WL 707235, at *3 (D. Kan. Feb. 24, 2014) (declining to follow *Asadi*); *Ahmad v. Morgan Stanley & Co.*, 2 F. Supp. 3d 491, 496 n.5 (S.D.N.Y. 2014) (declining to reach issue, but finding *Murray* and *Egan* "persuasive"); *Rosenblum v. Thomson Reuters (Mkts.), LLC*, 984 F. Supp. 2d 141, 147-48 (S.D.N.Y. 2013) (approving SEC's regulation interpreting Dodd-Frank definition of "whistleblower"); *Ellington v. Giacoumakis*, 977 F. Supp. 2d 42, 45 (D. Mass. 2013) ("This court respectfully disagrees and instead adopts the SEC's interpretation of the relevant provisions of Dodd-Frank.").

Case No.: 5:14-CV-01344-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

After reviewing these arguments, this Court adopts the majority view and rejects Defendants' position. For the reasons expressed by most other courts, this Court likewise concludes under the *Chevron* framework that the statutory definition of "whistleblower" is ambiguous, and that the SEC's interpretation is a reasonable one that warrants deference. The plain language of § 78u-6(a)(6) requires reporting "to the Commission." However, "[i]t is a cardinal principle of statutory construction that a statute ought, upon the whole, to be so construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant." *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). Here, § 78u-6(h)(1)(A)(iii) would be ineffective if whistleblowers must report directly to the SEC. Notwithstanding the *Asadi* Court's efforts to reconcile these sections, these portions of Dodd-Frank are—at minimum—susceptible to more than one interpretation when read together. *See Rosenblum*, 984 F. Supp. 2d at 147-48 ("When considering the DFA [Dodd-Frank Act] as a whole, it is plain that a narrow reading of the statute requiring a report to the SEC conflicts with the anti-retaliation provision, which does not have such a requirement. Thus, the governing statute is ambiguous."). Accordingly, the next question is whether Rule 21F-2(b)(1) is a "permissible construction of the statute." *McMaster v. United States*, 731 F.3d 881, 889 (9th Cir. 2013) (quoting *Chevron*, 467 U.S. at 843). The SEC's interpretation is a reasonable position that most other courts have adopted and that comports with Dodd-Frank's scheme to incentivize broader reporting of illegal activities. *See Kramer*, 2012 WL 4444820, at *5 (noting that "the Dodd-Frank Act appears to have been intended to expand upon the protections of Sarbanes-Oxley"); *Bussing*, 2014 WL 2111207, at *11 ("Nor is it logical to conclude that Congress intended to encourage an across-the-board departure from the general practice of first making an internal report."). Defendants offer no reasons why Rule 21F-2(b)(1) would be an impermissible interpretation of the statute and acknowledge that "there is a split in authority regarding the scope of Dodd-Frank's whistleblower-protection provisions." Reply at 5.

This legal conclusion disposes of Defendants' sole argument against Connolly's Dodd-Frank claim. For the reasons above, the Court DENIES Defendants' motion to dismiss Connolly's first and second causes of action with respect to Connolly's Dodd-Frank claim.

2.        **The Sarbanes-Oxley Act**

Alternatively, Connolly contends that she qualifies as a whistleblower under the Sarbanes-Oxley Act (Pub. L. 107-204, 116 Stat. 745).  *See* Compl. ¶ 23 ("[S]he is protected against retaliation under the Sarbanes Oxley Act, 18 USC §1514A . . . .").  In response, Defendants raise three arguments: (a) that Connolly's claim is time-barred, (b) that WHJR is not a "public company" and thus not subject to Sarbanes-Oxley, and (c) that Connolly fails to allege that she engaged in any protected activity under Sarbanes-Oxley.  *See* Mot. at 14-16.

Turning to Defendants' first argument, the Sarbanes-Oxley Act requires that any aggrieved whistleblower first "fil[e] a complaint with the Secretary of Labor."  18 U.S.C. § 1514A(b)(1)(A).  Then, "if the Secretary has not issued a final decision within 180 days of the filing of the complaint and there is no showing that such delay is due to the bad faith of the claimant," the whistleblower may then bring "an action at law or equity for de novo review in the appropriate district court of the United States, which shall have jurisdiction over such an action without regard to the amount in controversy."  *Id.* § 1514A(b)(1)(B); *see also* 29 C.F.R. § 1980.103(d) (requiring filing "[w]ithin 180 days after an alleged violation of the Act occurs or after the date on which the employee became aware of the alleged violation of the Act").  Defendants' alleged retaliation occurred no later than December 18, 2012, when Connolly resigned.  Accordingly, Connolly needed to file a complaint by June 17, 2013 (the 180th day would have been Sunday, June 16, 2013).  *See Coppinger-Martin v. Solis*, 627 F.3d 745, 749 (9th Cir. 2009) (affirming dismissal of Sarbanes-Oxley whistleblower claim as time-barred).

The Complaint does not allege that Connolly filed a complaint with the Secretary of Labor within 180 days of her resignation, and Connolly freely admits that "she did not file a claim with the Department of Labor."  Opp'n at 5.  Instead, Connolly argues: "If the wrong includes, but is not limited to, the Sarbanes-Oxley Act, Plaintiff alleges that she need not comply with the requirements of exhaustion of administrative remedies by filing a complaint with the Secretary of Labor before bringing an action under the Dodd-Frank Act."  *Id.* at 5-6.  This argument fails because she cites no authority to support her view that exhaustion of administrative remedies is otherwise optional.

United States District Court
For the Northern District of California

Next, Connolly cites *Coppinger-Martin* for the proposition that a Sarbanes-Oxley violation occurs "when the discriminatory decision has been both made and communicated to the complainant." *Id.* at 6 (citing 627 F.3d at 749). Connolly theorizes that "no actual discriminatory decision has been made" because Defendants did not "communicate" any such decision to Connolly, such that "the limitations period has not yet begun to run, and/or *will never run* when one resigns." *Id.* (emphasis added). These arguments are flawed for several reasons. *Coppinger-Martin* did not address a voluntary resignation, and Connolly candidly concedes that the Ninth Circuit has held that in a constructive discharge case, the date of resignation triggers the limitations period: "We hold, to the contrary, that the date of discharge triggers the limitations period in a constructive discharge case, just as in all other cases of wrongful discharge." *Draper v. Coeur Rochester, Inc.*, 147 F.3d 1104, 1110 (9th Cir. 1998). Connolly resigned, so she cannot claim ignorance about the timing of her constructive discharge. Moreover, if no discriminatory decision has occurred, it is unclear how Connolly has a ripe claim at all. Her bare assertion that the limitations period "will never run when one resigns" is therefore baseless.

The Court observes that equitable tolling is available for the 180-day Sarbanes-Oxley limitations period. *See* § 1980.103(d) ("The time for filing a complaint may be tolled for reasons warranted by applicable case law."). While the Court concludes that Connolly's Sarbanes-Oxley claim is time-barred, the Court cannot find that amendment would be futile because Connolly may be able to allege facts establishing equitable tolling, if applicable. Thus, the Court GRANTS with leave to amend Defendants' motion to dismiss Connolly's first and second causes of actions with respect to Connolly's Sarbanes-Oxley claim.[4]

### 3. Summary as to First and Second Causes of Action

Connolly's first cause of action for declaratory judgment and second cause of action for wrongful termination are based on Defendants' alleged violations of Dodd-Frank and Sarbanes-Oxley. As explained above, the Court rejects Defendants' arguments for dismissing Connolly's

---

[4]      Because the Court grants Defendants' motion to dismiss for untimeliness, the Court need not reach Defendants' second and third arguments for dismissing Connolly's Sarbanes-Oxley claim.

Case No.: 5:14-CV-01344-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

claim under Dodd-Frank and thus DENIES Defendants' motion to dismiss Connolly's first and second causes of action with respect to Connolly's Dodd-Frank claim.

However, Connolly cannot sue under Sarbanes-Oxley because of the statute of limitations, absent equitable tolling. Accordingly, the Court GRANTS with leave to amend Defendants' motion to dismiss Connolly's first and second causes of action with respect to Connolly's Sarbanes-Oxley claim. If Connolly cannot allege facts establishing equitable tolling, the Court will dismiss with prejudice Connolly's first and second causes of action with respect to Connolly's Sarbanes-Oxley claim.[5]

### B.   Wrongful Termination Claims: Second, Third, Sixth, and Eleventh Causes of Action

Connolly pleads four causes of action against Defendants that depend on a theory of wrongful termination. As noted above, her second cause of action (now dismissed in part) alleges wrongful termination in violation of federal whistleblower laws. Compl. ¶¶ 35-36. In her third cause of action, Connolly pleads wrongful termination for whistleblowing under California law, specifically for improper retaliation against an employee under California Labor Code §§ 2856 and 1102.5. *See id.* ¶ 43. Connolly's sixth cause of action alleges wrongful termination in violation of public policy, citing Defendants' alleged violations of FINRA rules, federal law, and California statutes. *See id.* ¶ 69. Finally, in her eleventh cause of action, Connolly claims breach of the implied covenant of good faith and fair dealing, alleging that Defendants violated her implied contractual rights by "constructively discharging" her. *Id.* ¶ 92.

Defendants move to dismiss all four of these claims, arguing that Defendants did not wrongfully terminate Connolly because she voluntarily resigned. Defendants argue that Connolly failed to plead sufficient facts to support a theory of constructive discharge, such as intolerable working conditions that effectively forced her resignation. *See* Mot. at 8-9. There is no dispute that Connolly resigned. *See* Compl. ¶ 10. However, in opposition, Connolly contends that "a demand that the employee perform an illegal act is an act of constructive discharge," and that the reasonableness of the parties' respective conduct is a triable issue of fact. Opp'n at 3.

---

[5]   For additional reasons discussed below, Connolly's second cause of action is dismissed in full with leave to amend. Connolly must cure all deficiencies in amending this claim.

Case No.: 5:14-CV-01344-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

1    The Court concludes that Connolly's wrongful termination claims warrant dismissal with

2  leave to amend.  Connolly's allegations about Defendants' misconduct are serious, but she has not

3  pleaded sufficient facts to claim that Defendants constructively discharged her.

4    The Court first addresses the law governing Connolly's constructive discharge theory.

5  Connolly has alleged wrongful termination under multiple legal theories, including the Dodd-Frank

6  Act, the Sarbanes-Oxley Act, and the California Labor Code.  However, Defendants rely on both

7  state and federal law of constructive discharge to support dismissal of all four causes of action that

8  rely on a theory of wrongful termination, asserting that "[t]he California and federal standards for

9  pleading constructive discharge are essentially the same," citing Ninth Circuit and California

10  precedent.  Mot. at 7.  Connolly does not disagree with this statement, and also relies on

11  Defendants' cited precedents for the proper legal test.  *See* Opp'n at 3-4.  Also, Connolly does not

12  dispute that all four causes of action above depend on her allegation that Defendants constructively

13  discharged her.

14    California courts have addressed the legal test for constructive discharge under various

15  causes of action, including claims for discrimination and wrongful termination in violation of

16  public policy.  In *Turner v. Anheuser-Busch, Inc.*, the California Supreme Court explained that

17  "[t]he doctrine of constructive discharge addresses such employer-attempted 'end runs' around

18  wrongful discharge and other claims requiring employer-initiated terminations of employment."  7

19  Cal. 4th 1238, 1244 (1994) (addressing claim for "constructive wrongful discharge in violation of

20  public policy").  In clarifying the standard for constructive discharge under California law, the

21  *Turner* Court noted that "[t]he doctrine of constructive discharge was first recognized in federal

22  cases brought under the National Labor Relations Act," and reviewed federal and Ninth Circuit

23  case law regarding constructive discharge in discrimination contexts.  *Id.* at 1245-47.  After

24  reviewing this precedent, the Court held: "In order to establish a constructive discharge, an

25  employee must plead and prove, by the usual preponderance of the evidence standard, that the

26  employer either intentionally created or knowingly permitted working conditions that were so

27  intolerable or aggravated at the time of the employee's resignation that a reasonable employer

28  would realize that a reasonable person in the employee's position would be compelled to resign."

14

1    *Id.* at 1251; *see also Casenas v. Fujisawa USA, Inc.*, 58 Cal. App. 4th 101, 112 (1997) (applying

2    *Turner* to sexual harassment and retaliation claims).

3           Federal courts have applied a comparable legal standard for constructive discharge in

4    discrimination cases.  The U.S. Supreme Court has held: "The inquiry is objective: Did working

5    conditions become so intolerable that a reasonable person in the employee's position would have

6    felt compelled to resign?"  *Pa. State Police v. Suders*, 542 U.S. 129, 141 (2004) (addressing sexual

7    harassment claims).  The Ninth Circuit has applied a standard similar to that of California courts,

8    holding that constructive discharge requires "treatment sufficiently intolerable that a reasonable

9    employee would have felt compelled to resign."  *Poland v. Chertoff*, 494 F.3d 1174, 1189 (9th Cir.

10   2007).  Regarding an employer's intent, the Ninth Circuit "do[es] not require that, in addition to

11   proving that working conditions were intolerable, a plaintiff must establish that his employer

12   created the intolerable conditions with the intent to cause the employee to resign."  *Id.* at 1184 n.7;

13   *see also Watson v. Nationwide Ins. Co.*, 823 F.2d 360, 361 (9th Cir. 1987) ("This test establishes an

14   objective standard; the plaintiff need not show that the employer subjectively intended to force the

15   employee to resign.").  This standard for intent may differ from California's, which requires that

16   the employer "either intentionally created or knowingly permitted" intolerable conditions.  *Turner*,

17   7 Cal. 4th at 1251.  However, for purposes of this motion to dismiss, whether Connolly's

18   resignation negates her claims for constructive discharge, and not Defendants' intent, is at issue.

19          Given the Ninth Circuit and California precedent discussed above, and the fact that the

20   parties do not dispute the legal standards for constructive discharge, there appear to be no material

21   differences between the relevant state and federal laws regarding constructive discharge for

22   purposes of evaluating Connolly's four causes of action predicated upon constructive discharge.

23   Moreover, the Court finds that under either Ninth Circuit or California case law, Connolly has not

24   stated a claim for constructive discharge in light of her voluntary resignation.

25          In the words of the California Supreme Court, "[t]he conditions giving rise to the

26   resignation must be sufficiently extraordinary and egregious to overcome the normal motivation of

27   a competent, diligent, and reasonable employee to remain on the job to earn a livelihood and to

28   serve his or her employer."  *Id.* at 1246.  Courts have concluded that "an employee cannot simply

15

'quit and sue,' claiming he or she was constructively discharged," for "[t]he proper focus is on whether the resignation was coerced, not whether it was simply one rational option for the employee." *Id.*; *see also Poland*, 494 F.3d at 1184 ("We set the bar high for a claim of constructive discharge because federal antidiscrimination policies are better served when the employee and employer attack discrimination within their existing employment relationship, rather than when the employee walks away and then later litigates whether his employment situation was intolerable."). "To act reasonably, an employee has an obligation not to assume the worst and not to jump to conclusions too quickly. An employee who quits without giving his employer a reasonable chance to work out a problem has not been constructively discharged." *Tidwell v. Meyer's Bakeries, Inc.*, 93 F.3d 490, 494 (9th Cir. 1996) (citations omitted).

Here, Connolly has not pleaded facts sufficient to show that she was "compelled to resign." As an initial matter, Connolly identifies no "extraordinary" or "egregious" working conditions between her start date of July 9, 2012 and December 13, 2012, when Connolly received the Trausch file. Connolly's allegations regarding the Trausch file are serious. She asserts that Remkes told her that she should have presented the actual facts "as a 'hypothetical,'" and directed her to return the Trausch file and make one copy for Remkes's eyes only. Compl. ¶ 9. Remkes also told her not to respond to Gilbert's request for a written statement. *Id.* Remkes drafted an untruthful response himself and asked Connolly to tell Gilbert that "there was no real file and no actual checks." *Id.* ¶ 10. Furthermore, Remkes stated that he "was going to shred his file and that he wished he had shred the original file," and that Trausch told Remkes that Remkes should not have asked Connolly to call compliance. *Id.*

"In some circumstances, a single intolerable incident, such as . . . an employer's ultimatum that an employee commit a crime, may constitute a constructive discharge." *Turner*, 7 Cal. 4th at 1247 n.3; *see also Jacobs v. Universal Dev. Corp.*, 53 Cal. App. 4th 692, 698-702 (1997) (noting that an employer cannot "demand that the employee commit a criminal act"). However, Connolly does not allege that she conveyed any of her concerns to Remkes, or that she reported Remkes's alleged misconduct to Gilbert or anyone else at Royal Alliance, before voluntarily resigning. Instead, after Remkes allegedly instructed Connolly to lie, Connolly does not allege that she

16

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    disagreed with Remkes or refused his request, but rather "went home and returned the next

2    morning" to resign, before contacting Gilbert.  Compl. ¶¶ 10-11.  Thus, Connolly does not allege

3    that she gave her employer a "reasonable chance to work out a problem" before quitting, which

4    means that she "has not been constructively discharged."  *Tidwell*, 93 F.3d at 494.

5         Connolly's Opposition alleges that Remkes issued Connolly "an ultimatum to commit a

6    crime," Opp'n at 3, but that allegation is not in the Complaint.  Connolly's Complaint does not

7    allege that Remkes threatened any adverse consequences for Connolly's refusal to lie to Gilbert,

8    such as a reprimand or termination.  *See* Compl. ¶ 10.  At most, Connolly has alleged that Connolly

9    chose to resign without confronting Remkes about his actions.

10        For the foregoing reasons, Connolly's second, third, sixth, and eleventh causes of action are

11   hereby DISMISSED with leave to amend.  Defendants have not shown that the deficiencies in the

12   Complaint "could not possibly be cured by the allegation of other facts," *Lopez*, 203 F.3d at 1130,

13   and it is possible that Connolly could allege more facts to support her constructive discharge

14   theory.  Connolly must allege additional facts to support an inference that "the resignation was

15   coerced," *Turner*, 7 Cal. 4th at 1246, and that she gave Defendants a "reasonable chance" to

16   resolve the dispute before resigning, *Tidwell*, 93 F.3d at 494.

17        **C.    Contract-Related Claims: Fourth and Fifth Causes of Action**

18        Connolly further asserts claims based on her employment agreement with Defendants.  *See*

19   Compl. Ex. 1.  Her fourth cause of action alleges breach of a written contract, asserting that she

20   "performed all conditions required of her," but that Remkes and WHJR "failed to provide pay at 40

21   hours per week at the agreed to wage" and engaged in illegal behavior.  Compl. ¶¶ 59-60.

22   Connolly further claims that "she could have worked for another 10 years but for the fact that she

23   was constructively discharged."  *Id.* ¶ 62.  For her fifth cause of action, Connolly pleads a claim for

24   promissory estoppel, asserting that Defendants induced her to move to California "in reliance on

25   the promise of a job 40 hours per week and $44,000.00 per year," and seeking "enforcement of the

26   promises."  *Id.* ¶¶ 65-67.

27        Defendants' sole argument for dismissing both claims is that Remkes did not promise

28   Connolly compensation at 40 hours per week.  Defendants rely on Remkes's statement in his letter

**United States District Court**
For the Northern District of California

1  to Connolly that: "Your initial working time will be a forty hour week; however, I think a lower

2  number i.e. 36 will probably be more realistic in the future for a number of reasons."  Compl. Ex.

3  1.  According to Defendants, this sentence demonstrates that "the agreement expressly

4  contemplates Plaintiff working ***less than*** 40 hours per week."  Mot. at 20 (emphasis in original).  In

5  response, Connolly points to ambiguity as to when the "initial working time" of 40-hour weeks

6  ended (if at all), and that "any ambiguities in the document must be resolved in Plaintiff's favor at

7  this point in the pleadings."  Opp'n at 11.

8       After considering the parties' very cursory arguments on this issue, the Court finds

9  insufficient grounds for dismissing Connolly's contract-related claims.  As an initial matter,

10  Remkes's letter is silent as to what state's law governs interpretation of the parties' agreement.

11  The Complaint alleges that "the contract performance was in California and thus California law

12  applies."  Compl. ¶ 3.  Defendants do not contest this allegation, but neither side cites any

13  California law in support of its position.  For purposes of this motion, the Court assumes that

14  California law governs Connolly's contract and promissory estoppel claims.

15       The Court agrees with Connolly that Remkes's letter is ambiguous as to whether and how

16  long Connolly was to work and receive pay for 40 hours per week.  Remkes's letter states that

17  Connolly would initially work a "forty hour week," that fewer hours "will probably be more

18  realistic in the future for a number of reasons," and that "[t]his time might be adjusted from time to

19  time."  Compl. Ex. 1.  Remkes's letter omits any terms that set forth when Connolly's hours would

20  change, by how much, or what "reasons" would trigger this reduction.  Indeed, the first paragraph

21  indicates that she would serve an "initial probation time" through December 31, 2012, which

22  includes the entire period that she worked before resigning on December 18, 2012.  Taking all

23  reasonable inferences in Connolly's favor for purposes of this motion to dismiss, Connolly could

24  have expected compensation for 40 hours per week throughout her probationary tenure or until

25  Remkes and she reached a superseding agreement.  By contrast, Defendants' interpretation of

26  Remkes's letter is strained because it implies that Remkes had the power to reduce Connolly's

27  hours and pay for any reason and at any time, resembling an illusory promise.  *See Asmus v. Pac.*

28

Case No.: 5:14-CV-01344-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

*Bell*, 23 Cal. 4th 1, 16 (2000) ("Thus, an unqualified right to modify or terminate the contract is not enforceable.").

Under California law, "[t]he analysis of whether an ambiguity exists is not limited to the words of the contract." *Adams v. MHC Colony Park, L.P.*, 224 Cal. App. 4th 601, 620 (2014). "Trial courts are required to receive provisionally any proffered parol evidence that is relevant to show whether the contractual language is reasonably susceptible to a particular meaning." *Id.* (citing *Pac. Gas & E. Co. v. G. W. Thomas Drayage Co.*, 69 Cal. 2d 33, 39-40 (1968)). Accordingly, the scope of the employment agreement may require additional extrinsic evidence, which is not yet available at the pleadings stage. Defendants' motion to dismiss Connolly's fourth and fifth causes of action is DENIED.

### D.   California Fair Employment and Housing Act: Eighth Cause of Action

Connolly claims that Defendants violated California's Fair Employment and Housing Act (Cal. Gov. Code § 12900 et seq., "FEHA") because "Plaintiff was both harassed and retaliated against" for refusing to lie about the Trausch file. Compl. ¶ 80. Specifically, Connolly alleges violations of §§ 12940(j) and 12940(h). *Id.* ¶¶ 81, 82. Section 12940(j) makes it illegal for an employer to "harass an employee, an applicant, or a person providing services pursuant to a contract" "because of race, religious creed, color, national origin, ancestry, physical disability, mental disability, medical condition, genetic information, marital status, sex, gender, gender identity, gender expression, age, sexual orientation, or military and veteran status." Section 12940(h) further makes it illegal for an employer to "discharge, expel, or otherwise discriminate against any person because the person has opposed any practices forbidden under this part or because the person has filed a complaint, testified, or assisted in any proceeding under this part." Connolly also states that she filed a claim with the California Department of Fair Employment and Housing and received a right-to-sue notice, which she served on Defendants. *Id.* ¶ 79.

Defendants contend that the FEHA does not apply to any of the misconduct that Connolly alleges in her Complaint. As to § 12940(j), Defendants argue that Connolly fails to allege any "harassment" within the scope of the FEHA, and that her allegations regarding harassment based on age, gender, or medical condition are insufficient. As to § 12940(h), Defendants claim that they

United States District Court
For the Northern District of California

United States District Court
For the Northern District of California

1    are not "employers" as defined under § 12926(d) because they do not employ five or more

2    employees.  They further claim that Connolly did not oppose any forbidden practices that would

3    fall within the scope of § 12940(h).  *See* Mot. at 21-22.

4         The Court agrees with Defendants that Connolly has not adequately pleaded claims under

5    the FEHA.  Starting with § 12940(h), Connolly concedes that the applicable definition of

6    "employer" is § 12926(d), which states that "'Employer' includes any person regularly employing

7    five or more persons."  Her Complaint contains no allegation that Defendants employed five

8    persons, only that they employed "at least one person."  Compl. ¶ 81.[6]  In her Opposition, Connolly

9    simply asserts that "the employer employed five or more employees at the time of the wrongs

10    satisfying California <u>Government Code</u> §12926(d)."  Opp'n at 12.  However, this factual assertion

11    is not in the Complaint and has no support in Connolly's Opposition.  Therefore, Connolly has

12    failed to state a claim under § 12940(h).

13         Turning to § 12940(j), the Court finds that the Complaint fails to allege sufficient facts to

14    support a claim that Defendants "harassed" Connolly on the basis of her age, gender, or

15    undisclosed medical condition.  "In the FEHA, the terms 'discriminate' and 'harass' appear in

16    separate provisions and define distinct wrongs."  *Roby v. McKesson Corp.*, 47 Cal. 4th 686, 705

17    (2009).  "[H]arassment focuses on situations in which the social environment of the workplace

18    becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an

19    offensive message to the harassed employee."  *Id.* at 706.  Moreover, § 12940(j) addresses only

20    harassment that occurs "because of" characteristics such as age, gender, or health.  § 12940(j)(1).

21         Here, Connolly fails to allege plausible claims of harassment based on such personal

22    characteristics.  She alleges that Remkes told her to lie to Gilbert regarding the Trausch file

23    because of a potential FINRA violation.  Other than noting her age and alluding to a vague medical

24    condition, Connolly has not pleaded a basis for concluding Remkes took these actions against her

25    because of her age, gender, or health.  *Cf. Roby*, 47 Cal. 4th at 707-08 (noting "favoritism" and

26    "hostile social interactions" as examples of harassment).  In paragraph 62 of the Complaint,

27

28

---

[6]     Section 12940(j) applies a different definition of "employer" that requires only "employing one or more persons," rather than five.  § 12940(j)(4)(A).  The parties do not dispute that claims under § 12940(h) require the definition of "employer" under § 12926(d).

Case No.: 5:14-CV-01344-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

Connolly posits that "[s]he was requested to lie because she was female and 65 and could be sacrificed if need be," while "[b]y contrast, the associate, Mr. Rolf Trausch, a male, was not terminated or sanctioned." Compl. ¶ 62. However, Connolly does not state Trausch's age, nor does she allege that Remkes knew about her undisclosed medical condition. Furthermore, Connolly supplies no factual basis for her assertion that she was "sacrificed" and asked to lie "because she was female." She has alleged only that Remkes instructed her to lie to cover up FINRA violations, in connection with her review of the Trausch file, not because of her gender. By contrast, as the California Supreme Court has explained, "harassment consists of conduct outside the scope of necessary job performance, conduct presumably engaged in for personal gratification, because of meanness or bigotry, or for other personal motives." *Reno v. Baird*, 18 Cal. 4th 640, 645-46 (1998); *see also Serri v. Santa Clara Univ.*, 226 Cal. App. 4th 830, 870-71 (2014) (affirming summary adjudication of harassment claims due to lack of "hostile or derogatory statements"). In light of these controlling legal standards, Connolly has not provided an adequate factual foundation to show "more than a sheer possibility" that Defendants harassed her. *Iqbal*, 556 U.S. at 678.

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss. Connolly's eighth cause of action is DISMISSED. Defendants have not demonstrated that any efforts by Connolly to amend this cause of action would be futile, and Connolly may be able allege additional facts to support her FEHA harassment claims. Accordingly, the Court grants leave to amend.

E.     **"Malice Oppression and Fraud": Ninth Cause of Action**

For her ninth cause of action, Connolly alleges "intentional acts of malice oppression and fraud" and seeks punitive damages. Compl. ¶¶ 86-87. These allegations appear to invoke California Civil Code § 3294(a), which states: "In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant." *See also Roby*, 47 Cal. 4th at 712 (discussing § 3294).

Defendants point out that Connolly's allegations are not an independent cause of action, but rather a request for punitive damages in connection with her other claims. *See* Mot. at 23. Connolly agrees that her claim for punitive damages depends on her other claims, but seeks leave to amend her other causes of action to include "charges of oppression, fraud or malice." Opp'n at 14. Accordingly, Connolly's ninth cause of action is DISMISSED without leave to amend. However, Connolly may amend her surviving causes of action "not arising from contract" (as required by § 3294(a)) to allege grounds for punitive damages, if appropriate.

### F. Intentional Infliction of Emotional Distress: Tenth Cause of Action

Under her tenth cause of action, Connolly pleads a claim for intentional infliction of emotional distress, alleging that she "suffered great worry and concern caused by the outrageous behavior of the defendants in demanding that she misrepresent the facts or cover up the truth." Compl. ¶ 89. In moving to dismiss this claim, Defendants argue that Connolly (1) fails to allege the requisite "extreme and outrageous conduct," and (2) insufficiently pleads severe or extreme emotional distress. Reply at 11-12.

"A cause of action for intentional infliction of emotional distress exists when there is (1) extreme and outrageous conduct by the defendant with the intention of causing, or reckless disregard of the probability of causing, emotional distress; (2) the plaintiff's suffering severe or extreme emotional distress; and (3) actual and proximate causation of the emotional distress by the defendant's outrageous conduct." *Hughes v. Pair*, 46 Cal. 4th 1035, 1050 (2009) (quotations and citations omitted). "With respect to the requirement that the plaintiff show severe emotional distress, this court has set a high bar. Severe emotional distress means emotional distress of such substantial quality or enduring quality that no reasonable [person] in civilized society should be expected to endure it." *Id.* at 1051 (quotations and citations omitted).

Here, the Court finds that Connolly's allegations of intentional infliction of emotional distress are inadequate. First, Connolly's pleadings and arguments amount to "[t]hreadbare recitals of the elements of a cause of action" and "legal conclusions." *Iqbal*, 556 U.S. at 678. The Complaint includes only one paragraph of allegations specific to intentional infliction of emotional distress, which recites in conclusory fashion that she "suffered great worry and concern." Compl.

22

¶ 89.  Furthermore, her Opposition brief is equally conclusory: "Requiring an employee, licensed by the SEC, to lie about conduct violative of the SEC regulations is extreme and outrageous. Telling Plaintiff that he was going to destroy the file, and/or that she had to say it was a hypothetical was equally outrageous.  When the employee had to decide whether to do it or quit because it was an intolerable demand, she was subject to great emotional distress.  Rightfully so." Opp'n at 13.

Second, Connolly has not alleged that Defendants intended to cause—or recklessly disregarded the possibility of causing—emotional distress, which is a necessary element of her claim.  At most, Connolly asserts that Remkes intended to cover up a securities violation by asking her to lie to the compliance department, not that Remkes sought to injure Connolly emotionally. Moreover, even if Remkes intended to commit a crime, his actions as pleaded would not rise to the level of "extreme and outrageous conduct."  California courts have held that "it is 'not . . . enough that the defendant has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress, or even that his conduct has been characterized by "malice," or a degree of aggravation which would entitle the plaintiff to punitive damages for another tort.'" *Cochran v. Cochran*, 65 Cal. App. 4th 488, 496 (1998) (quoting Restatement (Second) of Torts § 46, cmt. d) (affirming dismissal of claim).

Third, Connolly has not adequately pleaded "severe or extreme emotional distress."  As noted above, she alleges only "great worry and concern" without providing specific facts about any extreme emotional distress she may have suffered.  California courts have held that such allegations fail to establish the degree of harm necessary for a claim of intentional infliction of emotional distress.  *See, e.g.*, *Hughes*, 46 Cal. 4th at 1051 (affirming summary judgment against plaintiff who asserted "that she has suffered discomfort, worry, anxiety, upset stomach, concern, and agitation").

Accordingly, Connolly's tenth cause of action is DISMISSED.  Defendants have not shown that amendment of this claim would be futile.  Therefore, the Court grants leave to amend this cause of action.  Should she choose to amend, Connolly must allege additional facts as to each element required to state a claim for intentional infliction of emotional distress.

United States District Court
For the Northern District of California

### G.      Wage and Hour Claims: Seventh Cause of Action

Defendants move to dismiss the seventh cause of action for lack of subject matter jurisdiction under Fed. R. Civ. P. 12(b)(1).  *See* Mot. at 20-21; Reply at 12-13.  They contend that Connolly's total possible recovery for this claim falls short of the $75,000 requirement for diversity jurisdiction under 28 U.S.C. § 1332.  *See* Mot. at 21.  Defendants are expressly "[a]ssuming all of Plaintiff's other claims are dismissed for the reasons set forth" in their motion.  *Id.* at 20.  Defendants do not challenge the sufficiency of Connolly's pleading of her seventh cause of action and raise no other bases for dismissal.  The entirety of Connolly's response is: "The Court has jurisdiction over the hours and wage claim given that other claims survive the Defendants' 12(b)6 motion."  Opp'n at 12.

Defendants' position is that after some claims are dismissed, the amount in controversy requirement under § 1332 must then be assessed as to any remaining claim(s).  This argument implicates the Court's jurisdiction over all of Connolly's remaining claims, not just her seventh cause of action.  "A court has a duty to assure itself of its own jurisdiction, regardless of whether jurisdiction is contested by the parties."  *Peterson v. Islamic Republic of Iran*, 627 F.3d 1117, 1125 (9th Cir. 2010).  Regarding Connolly's claims based on federal questions—those that depend upon the Dodd-Frank and Sarbanes-Oxley Acts—the Court dismisses her second cause of action, but denies Defendants' motion to dismiss her first cause of action.  Connolly's remaining claims depend on state law.  Therefore, the Court cannot assert subject matter jurisdiction over those claims under 28 U.S.C. § 1331.  However, Connolly also alleges diversity jurisdiction under 28 U.S.C. § 1332, claiming that she and Defendants are citizens of different states, and seeking over $75,000.00 in total recovery.  Compl. ¶ 1.[7]

"A federal court has jurisdiction over the underlying dispute if the suit is between citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs."

---

[7]      Connolly also asserts that supplemental jurisdiction under 28 U.S.C. § 1367 exists "for all other claims that are within original jurisdiction claims."  Compl. ¶ 1.  Defendants have not addressed whether the Court should exercise supplemental jurisdiction.  *See* 28 U.S.C. § 1367(c); *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 561 (9th Cir. 2010) (discussing discretion to decline supplemental jurisdiction).  However, the Court need not address supplemental jurisdiction if diversity jurisdiction exists for Connolly's remaining claims.

United States District Court
For the Northern District of California

*Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1106 (9th Cir. 2010). The amount in controversy "is determined from the face of the pleadings" and controls "unless upon the face of the complaint, it is obvious that the suit cannot involve the necessary amount." *Id.* (quotations and citations omitted). "As the Supreme Court has explained, 'the fact that the complaint discloses the existence of a valid defense to the claim' does not eliminate federal jurisdiction, nor do events 'occurring subsequent to the institution of suit which reduce the amount recoverable below the statutory limit.'" *Id.* at 1108 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289-90 (1938)); *see also Budget Rent-A-Car v. Higashiguchi*, 109 F.3d 1471, 1473 (9th Cir. 1997) (noting same). Thus, the Ninth Circuit has indicated that the amount in controversy must be assessed at the time of filing. *See also* Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3702.4 (2014) ("Moreover, even if part of the plaintiff's claim is dismissed, for example, on a motion for summary judgment, thereby reducing the plaintiff's remaining claim below the requisite amount in controversy, the district court retains jurisdiction to adjudicate the balance of the claim."). However, two other Circuits have held that diversity jurisdiction can lapse after dismissal of claims necessary to reach the required amount in controversy. *See Shanaghan v. Cahill*, 58 F.3d 106, 109-10 (4th Cir. 1995); *Stevenson v. Severs*, 158 F.3d 1332, 1334 (D.C. Cir. 1998); *see also* 15 Moore's Federal Practice and Procedure § 102.104 (2014) ("The Fourth Circuit and the District of Columbia Circuits have expressly held that a diversity case may be dismissed altogether for lack of jurisdiction once the dismissal of one or more individual aggregated claims reduces the possibility of recovery below the jurisdictional requisite.").

In this case, the Court need not decide whether the amount in controversy must be re-assessed following dismissal of some claims in a complaint. Even assuming that only Connolly's surviving claims count towards satisfying the amount in controversy requirement, Defendants have failed to demonstrate to a "legal certainty" that diversity jurisdiction is improper. For the reasons above, Connolly's first, fourth, fifth, and seventh causes of action are not subject to dismissal for failure to state a claim. Under her fourth and fifth causes of action, she seeks contract damages including "consequential damages," *id.* ¶ 63, and damages stemming from her reliance on

25

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

Defendants' promises with "all costs associated with moving, *id.* ¶ 67. Under her seventh cause of action, she also seeks damages including "30 days of additional daily pay and double damages including attorney fees." *Id.* ¶ 77. Defendants have not shown that Connolly's total anticipated recovery would fall below $75,000. Defendants identify no other basis for dismissing her wage and hour claims. Accordingly, Defendants' motion to dismiss Connolly's seventh cause of action is DENIED.

## IV.   CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is GRANTED IN PART AND DENIED IN PART as follows.

Defendants' motion to dismiss Connolly's first and second causes of action (federal whistleblower claims) is granted only as to her Sarbanes-Oxley claim, and otherwise denied. Connolly may amend to address the Sarbanes-Oxley statute of limitations.

Defendants' motion to dismiss Connolly's second, third, sixth, and eleventh causes of action (wrongful termination claims) is granted. These claims are dismissed with leave to amend. If Connolly chooses to amend her second cause of action, she must address all deficiencies identified above.

Defendants' motion to dismiss Connolly's fourth and fifth causes of action (contract-related claims) is denied.

Defendants' motion to dismiss Connolly's eighth cause of action (FEHA) is granted. This claim is dismissed with leave to amend.

Defendants' motion to dismiss Connolly's ninth cause of action (malice, oppression, and fraud) is granted. This claim is dismissed without leave to amend, but Connolly may amend her surviving claims to allege grounds for punitive damages, if applicable.

Defendants' motion to dismiss Connolly's tenth cause of action (intentional infliction of emotional distress) is granted. This claim is dismissed with leave to amend.

Defendants' motion to dismiss Connolly's seventh cause of action (wage and hour claims) is denied.

Case No.: 5:14-CV-01344-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS

If Connolly fails to file an amended complaint within 21 days of this Order or to cure the deficiencies addressed in this Order, the claims dismissed in this Order without prejudice will be dismissed with prejudice.  Connolly may not add new claims or parties without leave of the Court or stipulation by the parties pursuant to Federal Rule of Civil Procedure 15.

**IT IS SO ORDERED.**

Dated: October 28, 2014

_Lucy H. Koh_

LUCY H. KOH
United States District Judge

27

Case No.: 5:14-CV-01344-LHK
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS